UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| ENTREPRENEUR MEDIA, INC., | |
|---|---|
| Plaintiff, | Civil Action No. 13-cv-01819 (MPS) |
| v. | |
| GARY WHITEHILL; WHITEHILL PARTNERS LLC; ENTREPRENEUR WEEK LLC; and DOES 1-10, | |
| Defendants. | |

**ORDER**

Upon consideration of Plaintiff Entrepreneur Media's ("EMI") Application for Entry of Default Judgment ("Application") and all supporting documents and pleadings of record, the Court hereby **ORDERS** that the Application is **GRANTED**, and finds as follows:

### I.   EMI'S TRADEMARK RIGHTS

EMI owns the following valid United States trademark registrations (collectively, the "EMI Marks"):

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities<br><br>First Use in Commerce: May 2, 1978 | 1,453,968<br><br>Aug. 25, 1987 |
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others<br><br>First Use in Commerce: July 1992 | 2,263,883<br><br>July 27, 1999 |

| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises<br><br>41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance<br><br>First Use in Commerce: October 18, 1991 | 2,502,032<br><br>Oct. 30, 2001 |
|---|---|---|
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet<br><br>First Use in Commerce: August 2007 | 4,260,948<br><br>Dec. 18, 2012 |
| ENTREPRENEUR | 9: downloadable computer software and software for mobile devices for the reproduction, display and distribution of digitized content.<br><br>First Use in Commerce: June 2008 | 4,345,424<br><br>June 4, 2013 |
| ENTREPRENEUR.COM | 9: Downloadable podcasts in the field of business, current events, lifestyle issues, and developments in science and technology<br><br>35: Providing business information and advice via a web site on a global computer network<br><br>38: Broadcasting programs via a global computer network; and streamlining of audio and video material via the Internet; telecommunications services, namely, transmission of podcasts<br><br>First Use in Commerce: September 2002 | 3,519,022<br><br>Oct. 21, 2008 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>35: On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public<br><br>First Use in Commerce: April 1999 | 3,470,064<br><br>July 22, 2008 |

| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities<br><br>First Use in Commerce: January 27, 2006 | 3,204,899<br><br>Feb. 6, 2007 |
|---|---|---|

Additionally, EMI's registration numbers 1,453,968, 2,263,883 and 2,502,032 for ENTREPRENEUR and 3,204,899 for ENTREPRENEUR'S STARTUPS are incontestable.

The federal registrations for the EMI Marks constitute prima facie evidence that the marks are valid and owned by EMI. 15 U.S.C. § 1115(a). Moreover, the incontestable registrations for the EMI Marks noted above constitute "conclusive evidence" of the validity of those registered Marks, EMI's ownership of those Marks, and EMI's "exclusive right to use the mark[s] in commerce." 15 U.S.C. § 1115(b).

Further, other courts have already recognized the validity and strength of the EMI Marks, including the ENTREPRENEUR Mark. The U.S. District Court for the Central District of California held that: (1) "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; (2) the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and (3) the ENTREPRENEUR® Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, at *9-10, 13 (C.D. Cal. June 23, 2004). The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212 (9th Cir. 2004). In addition, both a Magistrate Judge and District Court judge in the Eastern District of Virginia found the ENTREPRENEUR® Mark to be distinctive and the U.S. District Court for the District of Maryland recognized the EMI Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 1:11-cv-00409-LMB-JFA, Docket No. 22 (E.D. Va. Dec. 6, 2011); *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, NO. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013).

EMI has also developed extensive common law rights in the EMI Marks through consistent, wide-spread use of the marks throughout the United States. EMI and its predecessor

companies have used the ENTREPRENEUR Mark for over thirty years to publish magazines and books that provide editorial content and other information, as well as offer products and services related or of interest to businesses, business owners, and prospective business owners. EMI's ENTREPRENEUR magazine has a current paid circulation, including both subscriptions and newsstand sales, of more than 600,000 in the United States, is sold and distributed in over 100 foreign countries, and regularly features articles with high-profile entrepreneurs. EMI has also published over 200 books (and multiple e-books) under the ENTREPRENEUR and ENTREPRENEUR PRESS marks and it has conducted countless seminars, workshops, and other educational events, many of which are sponsored by large, well known corporations such as American Express, State Farm Insurance, and Verizon.

EMI also owns and operates numerous websites, such as *entrepreneur.com*, to promote its goods and services. The *entrepreneur.com* website has averaged over 6 million unique visitors and over 73.5 million page views per month, and is ranked, respectively, as the 1,144 and 1,984 most visited website in the United States and world by Alexa. EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with various companies, such as the UPS Store, MSNBC, and the Princeton Review.

As a result of the above activities and success, the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection.

## II.   THE CORPORATE DEFENDANTS' INFRINGEMENT OF EMI'S TRADEMARK RIGHTS

Defendants Whitehill Partners LLC and Entrepreneur Week LLC (collectively, the "Corporate Defendants") use the ENTREPRENEUR WEEK mark in commerce to offer business, educational, and event hosting services targeted at small and medium-sized business owners. Notably, the Corporate Defendants' ENTREPRENEUR WEEK mark places an undue emphasis on the "entrepreneur" term, in an attempt to trade off EMI's outstanding reputation in

the business community and the accumulated goodwill in the ENTREPRENEUR brand.

More specifically, the Corporate Defendants use the ENTREPRENEUR WEEK mark to (1) host educational events, seminars, exhibitions, and workshops on topics of interest to small- and mid-sized businesses and business people; (2) distribute articles, newsletters, and other materials to educate customers regarding forming, financing, developing, commercializing, and operating a business; (3) offer advertising services to various businesses; and (4) publish interviews with members of the business community.

The Corporate Defendants market their goods and services through various channels, such as a Facebook page (*https://www.facebook.com/EntrepreneurWeek*), a Twitter account (*https://twitter.com/NYEW*), and various other media outlets, such as a YouTube channel (*http://www.youtube.com/watch?v=z2c60UeKjyc*). Accordingly, the Corporate Defendants have used their ENTREPRENEUR WEEK mark to sell, offer for sale, distribute, and advertise their goods and services.

The Corporate Defendants' ENTREPRENEUR WEEK mark is likely to cause consumer confusion with the EMI Marks for several reasons. The EMI Marks, as discussed above, are strong and distinctive marks. The Corporate Defendants have incorporated the entirety of the ENTREPRENEUR Mark into their own mark. As both serve the needs of small- and mid-sized businesses, EMI and the Corporate Defendants offer closely related products and operate in the same market area. Therefore, the Corporate Defendants' ENTREPRENEUR WEEK mark is confusingly similar to the EMI Marks.

Additionally, the Corporate Defendants have intentionally, knowingly, deliberately, and willfully used their ENTREPRENEUR WEEK mark to violate EMI's trademark rights and trade off EMI's goodwill and reputation. The Corporate Defendants continued to engage in such unlawful behavior after EMI expressed concerns about their actions and filed this lawsuit.

### III.   INJUNCTIVE RELIEF

In consideration of the above and after weighing all appropriate equitable factors applicable to this case, the Court finds that permanent injunctive relief is appropriate because EMI has suffered irreparable injury that cannot be adequately compensated by monetary damages. Indeed, the Corporate Defendants' utter lack of response to this lawsuit signals a threat of continued infringement that must be ceased. As the Corporate Defendants are operating their business in direct violation of the Lanham Act, the balance of hardships strongly tilts in EMI's favor, and the public's interest would be best served by a permanent injunction against such unlawful behavior.

Therefore, the Court hereby enters the following **PERMANENT INJUNCTION**:

**A.**   The Corporate Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of this Order by personal or other service, shall permanently:

1. cease all use and never use the ENTREPRENEUR WEEK mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

2. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by the Corporate Defendants are in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

3. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Corporate Defendants, or any of their goods or services, are related to, authorized by, or sponsored by

6

EMI;

4. cease all use of the *entrepreneurweek.net* domain name and any similar domain names, and never register any domain names that contain any of the EMI Marks, or any domain names confusingly similar to any of the EMI Marks;

5. never unfairly compete with EMI in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the EMI Marks; and

6. never apply for or seek to register the ENTREPRENEUR WEEK mark or any mark that is likely to cause confusion with any of the EMI Marks.

[The Court further ORDERS the Corporate Defendants to file with the Court and serve upon EMI's counsel, within thirty (30) days after service of this order, a report in writing and under oath setting forth in detail the manner and form in which the Corporate Defendants have complied with this injunction.]

[The Court further ORDERS the Corporate Defendants and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, to transfer to EMI all domain names, including but not limited to *entrepreneurweek.net*, in the Corporate Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling thereof, or are otherwise confusingly similar to, or contain any of, the EMI Marks.]

## IV. COSTS AND ATTORNEYS' FEES

The Court hereby deems EMI to be the prevailing party in this action under 15 U.S.C. § 1117(a) and 54(d)(1) of the Federal Rules of Civil Procedure. [Further, the Court deems this case to be exceptional under 15 U.S.C. § 1117(a) because of the Corporate Defendants' intentional and willful infringement, as well as their defiance and protraction of the judicial process by not responding or appearing in this matter.] Accordingly, EMI is hereby awarded its

costs ~~and reasonable attorneys' fees~~, and is directed to submit a request for costs ~~and attorneys'~~ ~~fees~~ in accordance with the procedures and deadlines set forth in Federal Rule of Civil Procedure 54(d) and Local Rule ~~~~ 54.

On this  19th  day of  August , 2015, it is so ORDERED.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge